1  DAVID R. ZARO (BAR NO. 124334)
   EMILY L. MURRAY (BAR NO. 223815)
2  ALLEN MATKINS LECK GAMBLE
     MALLORY & NATSIS LLP
3  515 South Figueroa Street, Ninth Floor
   Los Angeles, California 90071-3309
4  Phone: (213) 622-5555
   Fax: (213) 620-8816
5  E-Mail: dzaro@allenmatkins.com
            emurray@allenmatkins.com
6
   Attorneys for Defendant
7  FEDERAL DEPOSIT INSURANCE
   CORPORATION
8

4:01 PM

FILED
CLERK, U.S. DISTRICT COURT

FEB 20 2009

CENTRAL DISTRICT OF CALIFORNIA
BY                            DEPUTY

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12  BILLIE J. LARRY, an individual,,          Case No. CV09 01254 SVW(RC)

13              Plaintiff,                    NOTICE OF REMOVAL

14       vs.

15  AMPRO MORTGAGE
    CORPORATION, an unknown entity;
16  UNITED FINANCIAL MORTGAGE
    CORPORATION, an unknown entity;
17  ALAN PARKENSON, an individual;
    ALLIANCE BANCORP, a California
18  corporation; INDYMAC FEDERAL
    BANK, N.A., an unknown entity; and
19  DOES 1-X, inclusive,

20              Defendants.

21

22  **TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE**

23  **CENTRAL DISTRICT OF CALIFORNIA:**

24       PLEASE TAKE NOTICE that pursuant to 28 U.S.C. § 1331, 28 U.S.C.

25  § 1441, 12 U.S.C. § 1819(b)(2)(B) and 12 U.S.C. § 1821(d)(6)(A), the Federal

26  Deposit Insurance Corporation ("FDIC"), as the duly appointed Receiver for

27  IndyMac Bank, F.S.B. ("FDIC-Receiver") and as the duly appointed Conservator for

28

1    IndyMac Federal Bank, FSB ("FDIC-Conservator") (collectively, the "Bank")

2    hereby removes to this Court the above-referenced action.

3        1.    On July 11, 2008 ("Closing Date"), the Office of Thrift Supervision

4    ("OTS") closed IndyMac Bank, F.S.B. (the "failed institution") and appointed the

5    FDIC-Receiver to act as the Receiver for the failed institution pursuant to 12 U.S.C.

6    § 1464(d)(2)(A) and § 1821(c)(5).  The FDIC-Receiver is the successor-in-interest

7    to the failed institution, assuming all rights, titles, powers, privileges, and operations

8    of the failed institution.  The FDIC-Receiver was appointed for the purpose of

9    winding up the affairs of the failed institution by liquidating the assets and liabilities

10   of the failed institution.  This purpose also includes the administration of claims

11   filed by creditors of the failed institution.

12       2.    On the Closing Date, the OTS chartered a new institution, IndyMac

13   Federal Bank, FSB.  The OTS then appointed the FDIC-Conservator to operate the

14   new institution, which opened for business on Monday, July 14, 2008.  Initially, the

15   assets and liabilities of the failed institution went to the FDIC-Receiver.  Through

16   the use of the powers granted to the FDIC under federal law, an agreement was

17   made whereby substantially all of the assets and some of the liabilities were

18   transferred to the FDIC-Conservator.

19       3.    The FDIC, in its appointed role as Receiver and Conservator, stands in

20   the shoes of the Bank to perform all functions of the Bank, including to defend this

21   action.  The parties have therefore stipulated to the substitution of the FDIC into the

22   action in its dual capacity as FDIC-Receiver and FDIC-Conservator.  Attached

23   hereto as **Exhibit 1** is a true and correct copy of the substitution stipulation filed in

24   the Superior Court.

25       4.    On or about January 14, 2009, an action was commenced in the

26   Superior Court of the State of California in and for the County of Los Angeles,

27   entitled *Billie J. Larry v. Ampro Mortgage Corporation et al.*, Case No. BC405403

28   (the "State Court Action").

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

819876.01/LA
-///

-2-
NOTICE OF REMOVAL

5.     The first date on which the Bank received a copy of the Complaint in the State Court Action was January 20, 2009.  This Notice of Removal is timely under 28 U.S.C. § 1446(b) and Fed. R. Civ. P. 6(a)(3) because it is filed on February 19, 2009.

6.     Pursuant to 28 U.S.C. § 1446(a), the FDIC files this Notice of Removal in the District Court of the United States for the district and division within which the State Action is pending.

7.     This Court also has original jurisdiction of this civil action under 28 U.S.C. § 1331, and therefore the action is also properly removable to this Court under 28 U.S.C. § 1441(b), because Plaintiff has asserted claims against the Bank arising under the following federal statutes: 15 U.S.C. § 1692 (Fair Debt Collection Practices Act); 15 U.S.C. § 1601 (Truth In Lending Act); and 12 U.S.C. § 2601-2617 (Real Estate Settlement Procedures Act).  These federal statutes encompass the stated bases for several of Plaintiff's causes of action.

8.     In addition, the case is removable pursuant to 28 U.S.C. § 1441(b). Any civil suit in which the FDIC, in any capacity, is a party is "deemed to arise under the laws of the United States."  12 U.S.C. § 1819(b)(A)(2)(A); *see also Bullion Services, Inc. v. Valley State Bank*, 50 F.3d 705, 707 (9th Cir. 1995).

9.     A federal party having an independent statutory right to remove may remove a matter without the joinder of all defendants.  *See Davis v. FSLIC*, 879 F.2d 1288, 1289 (5th Cir. 1989).  The FDIC is such a federal party, and as discussed above, has an independent statutory right to remove pursuant to 12 USC § 1819(b)(2)(B).

10.    Pursuant to 28 U.S.C. § 1446(a), the FDIC has attached as **Exhibit 2** copies of all process, pleadings and orders served on the Bank in the State Court Action.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

819876.01/LA
-///

-3-
NOTICE OF REMOVAL

11.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal with its attachments will be promptly served on Plaintiff and all defense counsel, and notice thereof will be filed with the clerk of the Los Angeles County Superior Court.

WHEREFORE, the FDIC hereby removes Los Angeles County Superior Court Case No. BC405403 to the United State District Court, Central District of California, Western Division.

Dated:  February 19, 2009

ALLEN MATKINS LECK GAMBLE
   MALLORY & NATSIS LLP
DAVID R. ZARO
EMILY L. MURRAY

By: _____

EMILY L. MURRAY
Attorneys for FEDERAL DEPOSIT
INSURANCE CORPORATION

LAW OFFICES
Allen Matkins Leck Gamble
   Mallory & Natsis LLP

819876.01/LA
-///-

-4-
NOTICE OF REMOVAL

EXHIBIT 1

FEB 13 2009

FILING WINDOW

1  ALLEN MATKINS LECK GAMBLE
      MALLORY & NATSIS LLP
2  DAVID R. ZARO (BAR NO. 124334)
   EMILY L. MURRAY (BAR NO. 223815)
3  515 South Figueroa Street, Ninth Floor
   Los Angeles, California 90071-3309
4  Phone: (213) 622-5555
   Fax: (213) 620-8816
5  E-Mail: dzaro@allenmatkins.com
            emurray@allenmatkins.com
6
   Attorneys for Defendant
7  FEDERAL DEPOSIT INSURANCE
   CORPORATION
8

9           SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                 FOR THE COUNTY OF LOS ANGELES

11

12  BILLIE J. LARRY, an individual,,          Case No. BC405403

13              Plaintiff,                     STIPULATION TO ALLOW FEDERAL
                                              DEPOSIT INSURANCE CORPORATION
14          vs.                               TO BE SUBSTITUTED IN THE PLACE
                                              AND STEAD OF DEFENDANT
15  AMPRO MORTGAGE CORPORATION,               INDYMAC FEDERAL BANK, N.A.;
    an unknown entity; UNITED FINANCIAL       [PROPOSED] ORDER
16  MORTGAGE CORPORATION, an
    unknown entity; ALAN PARKENSON, an
17  individual; ALLIANCE BANCORP, a
    California corporation; INDYMAC
18  FEDERAL BANK, N.A., an unknown
    entity; and DOES 1-X, inclusive,
19
                Defendants.
20

21

22          WHEREAS, on July 11, 2008 ("Closing Date"), the Office of Thrift Supervision

23  ("OTS") closed IndyMac Bank, F.S.B. (the "failed institution") and appointed the FDIC as

24  Receiver for the failed institution ("FDIC-Receiver") pursuant to 12 U.S.C. §

25  1464(d)(2)(A) and § 1821(c)(5).  The FDIC-Receiver is the successor-in-interest to the

26  failed institution, assuming all rights, titles, powers, privileges, and operations of the failed

27  institution.  The FDIC-Receiver was appointed for the purpose of winding up the affairs of

28  the failed institution by liquidating the assets and liabilities of the failed institution.  This

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

819134.01/LA
-///                              STIPULATION

EXHIBIT 1 PAGE 5

1  purpose also includes the administration of claims filed by creditors of the failed

2  institution.

3         WHEREAS, on the Closing Date, the OTS chartered a new institution, IndyMac

4  Federal Bank, FSB. The OTS then appointed the FDIC as Conservator for the failed

5  institution ("FDIC-Conservator ") to operate the new institution, which opened for

6  business on Monday, July 14, 2008. The assets and liabilities of the failed institution went

7  to the FDIC-Receiver upon appointment of it by the OTS. Through the use of the powers

8  granted to the FDIC under federal law, an agreement was made whereby substantially all

9  of the assets and some of the liabilities were transferred to the FDIC-Conservator. The

10 FDIC is operating in the dual capacity as FDIC-Receiver for the failed institution and as

11 FDIC-Conservator for IndyMac Federal Bank, FSB (collectively, the "Bank").

12        WHEREAS, on or about January 14, 2009, Plaintiff Billie J. Larry filed a

13 Complaint against, among others, IndyMac Federal Bank, N.A.. The Complaint seeks,

14 among other things, monetary damages and to enjoin any foreclosure. Plaintiff's claims

15 implicate the FDIC in its dual capacity as Receiver and Conservator for the Bank.

16        WHEREAS, in order to protect its interest, the FDIC seeks to be substituted into

17 this action in its dual capacity.

18        WHEREAS California Code of Civil Procedure Section 368.5 provides that when

19 there has been a transfer of interest from a party to the litigation to a non-party to the

20 action the court may substitute the non-party in the action.

21

22

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

819134.01/LA
-///

-2-
STIPULATION

EXHIBIT _1_ PAGE _6_

NOW THEREFORE, the parties to this Stipulation hereby stipulate between themselves that the Court enter an order substituting the FDIC as duly appointed Conservator for IndyMac Federal Bank, FSB and as duly appointed Receiver of IndyMac Bank, F.S.B., in place and stead of Defendant IndyMac Federal Bank, N.A..

Dated: _2/12/09_

ALLEN MATKINS LECK GAMBLE
   MALLORY & NATSIS LLP
DAVID R. ZARO
EMILY L. MURRAY

By: _____
EMILY L. MURRAY
Attorneys for FEDERAL DEPOSIT
INSURANCE CORPORATION

Dated: _2-12-09_

LAW OFFICES OF TIMOTHY L.
MCCANDLESS

By: _____
TIMOTHY L. MCCANDLESS
Attorneys for Plaintiff BILLIE J. LARRY

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

819134.01/LA

-3-
STIPULATION

EXHIBIT _1_ PAGE _7_

1    **IT IS HEREBY ORDERED that:**

2    The FDIC shall be substituted in the place and stead of IndyMac Federal Bank,

3    N.A., in the following form:  Federal Deposit Insurance Corporation, as Receiver for

4    IndyMac Bank, F.S.B.; Federal Deposit Insurance Corporation, as Conservator for

5    IndyMac Federal Bank, FSB.

6

7    Dated: _____    By: _____

8                                                             Judge of the Superior Court of the State
                                                             of California

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

819134.01/LA
-///

-4-

STIPULATION

EXHIBIT *l* PAGE *8*

# PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA          )
                             )  ss.:
COUNTY OF LOS ANGELES        )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 515 South Figueroa Street, Ninth Floor, Los Angeles, California 90071-3309.

On February 12, 2009, I served on interested parties in said action the within:

STIPULATION TO ALLOW FEDERAL DEPOSIT INSURANCE CORPORATION TO BE SUBSTITUTED IN THE PLACE AND STEAD OF DEFENDANT INDYMAC FEDERAL BANK, N.A.; [PROPOSED] ORDER

by placing a true copy thereof in sealed envelope(s) addressed as stated below.

Timothy L. McCandless, Esq.
LAW OFFICES OF TIMOTHY L. MCCANDLESS
15647 Village Drive
Victorville, CA 92394

I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 12, 2009, at Los Angeles, California.


Lorrie Anderson
(Type or print name)

*Lorrie Anderson*
(Signature)

EXHIBIT 1 PAGE 9

EXHIBIT 2

From: HS REALTY

300288 9479

San traq GMAC-ALL NC

RECEIVED BY
LEGAL DEPARTMENT

**SUMMONS** 08/07   JAN 20 2009
**(CITACION JUDICIAL)** PERSONAL   11:26AM

SUM-100

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JAN 14 2009

John A. Clarke, Executive Officer/Clerk

BY MARY GARCIA, Deputy

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**

AMPRO MORTGAGE CORPORATION, an unknown entity; UNITED FINANCIAL
MORTGAGE CORPORTION, an unknown entity; ALAN PARKENSON, an
individual; ALLIANCE BANCORP, a California corporation; INDYMAC FEDERAL
BANK, N.A., an unknown entity; and DOES 1-X, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

BILLIE J. LARRY, an individual

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/español/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/español/) o poniéndose en contacto con la corte o el colegio de abogados locales.

| The name and address of the court is: | CASE NUMBER: |
|---|---|
| (El nombre y dirección de la corte es): | (Número del Caso): BC405403 |

Superior Court of California, County of Los Angeles
111 North Hill Street
Los Angeles, California 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):

Timothy L. McCandless, Esq. SBN: 147715          (760) 690-8575
15647 Village Drive, Victorville, California 92394

DATE          JOHN A. CLARKE, CLERK          M. GARCIA          , Deputy
(Fecha)                                                                              (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of (specify):
3. [ ] on behalf of (specify):
   under: [X] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)   [ ] CCP 416.90 (authorized person)
   [ ] other (specify):
4. [X] by personal delivery on (date): 1-20-09

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

EXHIBIT 2 PAGE 10

TIMOTHY L. MCCANDLESS (SBN: 147715)
**LAW OFFICES OF TIMOTHY L. MCCANDLESS**
15647 Village Drive
Victorville, California 92394
(760) 912-3837 Telephone
(909) 494-4214 Facsimile

Attorney for Plaintiff,
BILLY J. LARRY



CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JAN 14 2009

John A. Clarke, Executive Officer/Clerk
By _____; Deputy
DOROTHY SWAIN

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

BC405403

| | |
|---|---|
| BILLIE J. LARRY, an individual, <br><br> Plaintiff, <br><br> v. <br><br> AMPRO MORTGAGE CORPORATION, an unknown entity; UNITED FINANCIAL MORTGAGE CORPORTION, an unknown entity; ALAN PARKENSON, an individual; ALLIANCE BANCORP, a California corporation; INDYMAC FEDERAL BANK, N.A., an unknown entity; and DOES 1-X, Inclusive, <br><br> Defendants. | **CASE NO:** <br><br> **COMPLAINT SEEKING MONETARY DAMAGES, STATUTORY DAMAGES, PUNITIVE DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY RELIEF** <br><br> **1. DECLARATORY RELIEF** <br> **2. FRAUD** <br> **3. TORTUOUS VIOLATION OF STATUTE [REAL ESTATE SETTLEMENT PROCEDURES ACT 12 USC Section 2607]** <br> **4. TORTUOUS VIOLATION OF STATUTE BUSINESS AND PROFESSIONS CODE SECTION 17200** <br> **5. VIOLATION OF CALIFORNIA CIVIL CODE 2923.6** <br> **6. VIOLATION OF 1788.17 OF THE RFDCPA** <br> **7. VIOLATION OF CIVIL CODE 1572** |

Plaintiff, Billy J. Larry, an individual, alleges herein as follows:

1

COMPLAINT FOR DECLARATORY RELIEF AND FOR DAMAGES

EXHIBIT 2 PAGE 11

## GENERAL ALLEGATIONS

1. Plaintiff, BILLY J. LARRY, is and at all times relevant has been a resident of the county of Los Angeles, State of California and the lawful owner of a parcel of Real Property commonly known as:

5131 Arlington Avenue Los Angeles, California 90043, with a legal description in the City of Los Angeles, County of Los Angeles State of California; APN: 5015031018;

Lot 232 of Tract 900, as per map recorded in Book 18, Page 166 of Maps, in the Office of the County recorder of said County. (hereinafter "Subject Property")

2. Defendant AMPRO MORTGAGE CORPORATION (hereinafter "AMPRO"), is and at all times herein mentioned was conducting business in the County of Los Angeles, State of California.

3. Defendant UNITED FINANCIAL MORTGAGE CORPORATIONUNITED Investment and Loan, (hereinafter "UNITED"), at all times relevant claim, is a State of California Chartered Industrial Bank, and is conducting business in the County of Los Angeles.

4. Defendant ALAN PARKENSON, (hereinafter "PARKENSON"), is and at all times herein mentioned was, an individual.

5. Defendant ALLIANCE BANCORP, (hereinafter "ALLIANCE"), is and was, a limited liability company existing by virtue of the laws of the State of California, and at all times alleged herein was doing business in the County of Los Angeles and the State of California.

6. Defendant INDYMAC FEDERAL BANK, N.A. (hereinafter "INDYMAC"), is and was, a member of the Federal Banking National Association.

2

7. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES I through X, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

8. Plaintiff is informed and believes and thereon alleges that. at all times herein mentioned each of the defendants sued herein was the agent and employee of each of the remaining defendants. Plaintiff further alleges that at all times said defendants were was acting within the purpose and scope of such agency and employment.

9. On or about. November 1, 2006, the California Department of Corporations revoked the Residential Mortgage Lender and/or Servicer License of AMPRO. and such revocation became effective on December 1. 2006. Notwithstanding the revocation of its license. AMPRO continued to make loans for which it was not licensed. [See Exhibit "A" attached hereto]

10. On or about. January 29, 2007, Plaintiff financed and obtained a loan evidenced by a Trust Deed and Note on his home through AMPRO. a subsidiary of UNITED. notwithstanding the revocation of its license in California. who obtained concurrent funding through ALLIANCE. which actually provided the funding. [See Exhibit "B" attached hereto]

11. On information and belief Plaintiff also is informed that AMPRO and/or UNITED, obtained compensation by way of points on the which were loaded on the total indebtedness. when the loan was sold but failed to disclose the range of these points on the Truth In Lending Disclosure Statement Form. and as mandated by the Real Estate Settlement Procedures Act ("RESPA").

12. On or about. January 29, 2007, Plaintiff refinanced the loan on her home. Plaintiff obtained a loan through AMPRO. AMPRO and/or UNITED was compensated for this loan by ALLIANCE as follows, they were provided substantial points fee, to the detriment of Plaintiff, plus a processing fee plus an Administration fee plus they were paid on information and belief some back end fees as a Yield Spread Premium and other undisclosed compensation outside and after the close of Escrow in an outrageous amount to the detriment of Plaintiff.

13. Plaintiff is informed and believes and thereupon alleges that Defendants, and each of them. entered into a fraudulent scheme, the purpose of which was to make a loan to Plaintiff, which Defendants, and each of them, were keenly aware that Plaintiff could not afford, at a cost way

3

COMPLAINT FOR DECLARATORY RELIEF AND FOR DAMAGES

EXHIBIT 2 PAGE 13

1   above the then prevailing market rate, made a loan to Plaintiff and falsely represented to Plaintiff

2   that he could not qualify for any other financing,  that Plaintiff could not qualify under any

3   reasonably underwriting guidelines, that such scheme was devised to extract illegal and

4   undisclosed compensation from Plaintiff by virtue of an undisclosed yield spread premium and

5   which Defendants, and each of them, shared in some presently unknown percentage.

6   14. On or about September 22, 2008, Plaintiff received the first and only notification from

7   Defendants indicating their intent to initiate foreclosure proceeding within thirty (30) days.

8   Defendants alleged that Plaintiff became in default of the loan, this default was occasioned by

9   the high payments, the structure of the loan and interest rate and the Subject Property.

10  Notwithstanding the falsified statements in the notification correspondence, Defendant never

11  once attempted to contact Plaintiff via first class mail prior to September 22, 2008.  [See Exhibit

12  "C" attached hereto, correspondence from IndyMac Federal Bank]

13  15. Plaintiff is informed and believes and therefore alleges that his loan after it was originated

14  and funded was sold on multiple occasions, bundled into a group of Trust Deeds and

15  subsequently sold to investors as a Derivative, "Mortgage Backed Security", and that therefore

16  none of these defendants, and each of them, owned this loan, or Note and can not be and are not

17  the Beneficiary, or lawfully appointed trustee, and have no right to declare a default, to cause

18  notices of default to issue or to be recorded, or to foreclose on Plaintiff's interest in the subject

19  property,  Defendants, and each of them, were not the note Holder or the Note holder in due

20  course or any Beneficiary at any time in regards to this loan.

21  16. That none of these Defendants, and each of them, were ever disclosed as the beneficiary in

22  accordance with California Code of Civil Procedure section 2924 et seq.

23  17. Plaintiff further allege on information and belief that none of these alleged beneficiaries or

24  representatives of the Beneficiary have the original note to prove that they are in fact the party

25  authorized to conduct the foreclosure.

26  18. Plaintiff further alleges that the foreclosure sale of the Subject Property was not executed in

27  accordance with the requirements of California Civil Code Sections 1624, 2923.5, 2932.5 and

28  Commercial Code section 3302 et seq.

COMPLAINT FOR DECLARATORY RELIEF AND FOR DAMAGES

EXHIBIT 2 PAGE 14

19. That the Trustee who was acting as the agent of the Principal failed to have written authorization to act for the principal and under California Civil Code Section 1624 the agency relationship must also be in written form.

20. That the notices and foreclosure failed to conform with the provisions of California Civil Code Sections 1624, 2923.5, 2932.5 et seq., and Commercial Code section 3302 et seq.

21. Plaintiff further alleges that California Civil Code section 2924 et seq. and its subparts are being applied to Plaintiff in a manner that is unlawful, because at least in part the party acting as the Trustee proceeded with the foreclosure of Plaintiff's Subject Property notwithstanding the fact that the Trustee was not in possession of the original Note, that the Note when it was assigned to Defendant ALLIANCE, the assignment by AMPRO did not covey the power of sale because it violated the terms of California Civil Code section 2932.5, that the assignment when it was made to, ALLIANCE, that the Note executed by Plaintiff was no longer a negotiable instrument because the assignment was not physically applied to the Note pursuant to the holding of *Pribus v. Bush*, (1981) 118 Cal.App.3d 1003, 173 Cal.Rptr. 747, although there was sufficient room on the back of the Note to complete the assignment, and as such the foreclosure of Plaintiff's subject property did not conform with the strict mandates of Civil Code section 2924.

22. That the Trustee and the loan servicer are acting as agents of the Beneficiary and signing documents as the agent of the agent of the agent of the Beneficiary for Plaintiff's Note and the notices therein, notwithstanding the fact that the Note was not negotiable prior to the sale of the Subject Property.

23. That by virtue of the method and manner of Defendants carrying out Civil Code section 2924 et seq., the foreclosure of the Subject Property is void ab initio as a matter of law.

### FIRST CLAIM FOR RELIEF

FOR DECLARATORY RELIEF

(As Against All Defendants)

24. Plaintiff incorporates Paragraphs 1 through 23 of the General Allegations as though such have been fully set forth herein.

5

COMPLAINT FOR DECLARATORY RELIEF AND FOR DAMAGES

EXHIBIT 2 PAGE 15

25. An actual controversy exists in which the parties must ascertain their rights, duties and right to title in the Subject Property.

26. An judicial determination is necessary that the parties may ascertain their rights, duties and right to title in the Subject Property.

27. The parties desire that the court may a judicial determination as to their rights, duties and right to title in the Subject Property.

28. An actual controversy has arisen and now exists between Plaintiff and Defendants, and each of them, concerning their respective rights, obligations and duties as it relates to the Subject Property in that Plaintiff contends that Defendants, and each of them, the loan made by AMPRO and UNITED as a matter of law is void ab initio because AMPRO did not have the requisite license in order to make a valid loan, further AMPRO, UNITED, ALLIANCE, INDYMAC FEDERAL BANK, N.A. were not holders in due course of the Note and Deed of Trust executed by Plaintiff, that Defendants, and each of them, had no right to foreclose on Plaintiff's Trust Deed and Note, and that their application of Civil Code section 2924 is unlawful, that Defendants utilized the electronic recording system known as the Mortgage Electronic Registration System, in order to further their scheme to defraud Plaintiff of his property by making appear that the assignment of the Note and Deed of Trust were lawful and executed in accordance with Civil Code section 2932.5 and Commercial Code section 3302 et seq., although in fact such transactions caused the Note to be rendered non-negotiable, and when the Note was assigned, the power of sale was not conveyed because the assignment was not recorded, and the manner in which the assignment was physically applied to the body of the Note rendered the Note non-negotiable, lacking the power of sale, the trustee, could not have lawfully proceeded with the foreclosure sale which is void ab initio, whereas defendant disputes these contentions and contends that irrespective of the fact that they do not own this security and can not produce the original note and chain of title, and that they are following the requirements of Civil Code section 2924 they have a right to foreclose.

29. Plaintiff desires a judicial determination of Defendants rights, obligations and duties, and a declaration as to who owns Plaintiff's Subject Property.

COMPLAINT FOR DECLARATORY RELIEF AND FOR DAMAGES

EXHIBIT 2 PAGE 16

## SECOND CAUSE OF ACTION

## FRAUD

(As Against Defendants AMPRO Mortgage Corporation, United Financial Mortgage Corporation, Alan Parkenson, Alliance Bancorp, IndyMac Federal N.A. and Does 1 through X. Inclusive)

30. Plaintiff re-alleges and incorporates Paragraphs 1 through 29 of the General Allegations as though such have been fully set forth herein.

31. Plaintiff alleges that effective, December 1, 2006, Defendants, and each of them, were engaged in an illegal scheme the purpose of which was to execute loans secured by real property, notwithstanding the fact that the California Department of Corporations revoked the Residential Mortgage Lender and/or Servicer License of Defendants, and each of them, in Case No. 4130527, in order to make commissions, kick-backs, illegal undisclosed yield spread premiums, and undisclosed profits by the sale of any instruments arising out of the transaction. Plaintiff alleges that Defendants, and each of them, have represented to plaintiff and to third parties that they were the owner of the Trust Deed and Note as either the Trustee or the Beneficiary regarding Plaintiff's real property. Based on this representation they caused a Notice of Default to be issued and recorded without disclosing their true role, and thereafter a notice of intent to foreclose and finally they executed a foreclosure, which was completed, permanently affecting Plaintiff right, title and interest in the Subject Property. In fact, Plaintiff alleges that the promissory note which was executed by Plaintiff and which initially formed a basis of a security interest in the subject property, was assigned in violation of Civil Code section 2932.5 et seq., and as such the promissory note was rendered as non-negotiable and no power of sale was conveyed with the note at the time of the assignment, and therefore, Defendants, and each of them, had no lawful security interest in the subject property.

32. Circa January 29, 2007, representatives, agents and/or employees of Defendants, and each of them, made false representations to Plaintiff in order to fund a loan, in which the Plaintiff's

COMPLAINT FOR DECLARATORY RELIEF AND FOR DAMAGES

EXHIBIT 2 PAGE 17

1   personal residence was to be security therefore. Plaintiff alleges that Defendants, and each of

2   them, intentionally failed to disclose that Defendants, and each of them, were not licensed as

3   Residential Mortgage Lenders and/or Servicers, that their license had in fact been revoked by the

4   Commissioner of the California Department of Corporations. Plaintiff further alleges that

5   Defendants, and each of them, made certain representations regarding their honesty, that they

6   were experts in obtaining loans which borrower's could afford and that they would only offer

7   Plaintiff a loan which was in his best interests given his credit history and financial needs and

8   limitations and that Plaintiff could trust the representations of Defendants, and each of them.

9   Plaintiff alleges that based upon the representations made by Defendants, and each of them,

10  Plaintiff reasonably reposed his trust in their representations and disclosed his private financial

11  information to Defendants, in order that Defendants could in keeping with their representations,

12  find a loan which was in the best interests of Plaintiff given his financial needs and limitations.

13  More particularly, Defendants, and each of them, represented that they would not make a loan to

14  Plaintiff unless he could afford the loan, and that they would not make the loan unless and until

15  he had passed the underwriting guidelines of the lender, which further assured that the loan being

16  offered to Plaintiff was in fact in the Plaintiff's best interests, and that the loan was within

17  Plaintiff's financial needs and limitations.

18  33. Plaintiff alleges that Defendants, and each of them, had a duty to disclose to Plaintiff that

19  Defendants' license had been revoked and that they were not licensed in the State of California

20  to make loans.

21  34. Plaintiff is informed and believes and thereupon alleges that defendants AMPRO and/or

22  UNITED engaged in some degree in making the loan to Plaintiff including, but not limited to:

23  made the loan to Plaintiff by "marketing and extending adjustable-rate mortgage ("ARM")

24  products to subprime Plaintiff in an unsafe and unsound manner that greatly increases the risk

25  that Plaintiff would default on the loan, including ARM products with one or more of the

26  following characteristics: (qualifying Plaintiff with a low initial payment on an introductory or

27  "star" rate that will expire after an initial period, without an adequate analysis of the Plaintiff's

28  ability to repay the debt at the fully-indexed rate; approving Plaintiff without considering

8

1   appropriate documentation and/or verification of his income; containing product features likely

2   to require frequent refinancing to maintain an affordable monthly payment and/or to avoid

3   foreclosure; including substantial prepayment penalties and/or prepayment penalties that extend

4   beyond the initial interest rate adjustment period; providing Plaintiff with inadequate and/or

5   confusing information relative to product choices, material loan terms and product risks,

6   prepayment penalties, and the Plaintiff's obligations for property taxes and insurance; approving

7   Plaintiff for a loan with inadequate debt-to-income analyses that did not properly consider the

8   Plaintiff's ability to meet his overall level indebtedness and common housing expenses; and/or

9   approving Plaintiff for loan or 'piggyback' loan arrangements with loan-to-value ratios

10   approaching or exceeding 100 percent of the value of the collateral;" and making Plaintiff a

11   mortgage loan without adequately considering the Plaintiff's ability to repay the mortgage

12   according to its terms.

13   35. Plaintiff alleges that defendant Alan Parkenson was engaged in making in fraudulent,

14   predatory loans, by and through its employer AMPRO and/or UNITED.

15   36. Plaintiff alleges that based upon the foregoing representations of Defendants, and each of

16   them, plaintiff did in fact repose her trust in the representations of Defendants, and each of them,

17   and that such trust was reasonable.

18   37. Plaintiff alleges that Defendants, and each of them, presented a loan to Plaintiff whereby

19   their represented that he did qualify for underwriting, and that the loan was within Plaintiff's

20   personal financial needs and limitations given the confidential financial information that Plaintiff

21   shared with Defendants.

22   38. Plaintiff allege that Defendants, and each of them, had a duty to disclose the true cost of the

23   loan which was made to Plaintiff, and the fact that Plaintiff could not afford the loan in the first

24   instance. Defendants, and each of them, provided Plaintiff a loan through Defendant AMPRO

25   and/or UNITED, and Defendants, and each of them, were secretly compensated, however, they

26   did not disclose for this loan that they were by being paid for its services, and in a spread of the

27   yield of an amount which has not yet been fully ascertained as a Yield Spread Premium paid-out

28   side and after the close of escrow.   Plaintiff alleges that such conduct violations RESPA 12 USC

COMPLAINT FOR DECLARATORY RELIEF AND FOR DAMAGES

EXHIBIT _2_ PAGE_ 19

1   2607 in which a yield Spread Premium is stated to be an illegal kick back.  According to RESPA

2   12 USC 2607 fees paid must be in accordance with the value of the work performed, and the

3   value of the work performed was less than the cost of the Yield Spread Premium or other

4   undisclosed compensation.

5   39.  Plaintiff is informed and believes and thereupon alleges that Defendant ALLIANCE paid the

6   other Defendants herein undisclosed fees above and beyond the value of the services actually

7   performed and an illegal kickback and added that additional amount to the total amount being

8   financed. however such amount was never disclosed to Plaintiff.

9   40. Plaintiff acquired the foregoing property by virtue of the said funding through ALLIANCE

10  based on the representations of Defendants. and each of them. that the loan was the best they

11  could obtain for her. and that the loan was well within Plaintiff's financial needs and limitations.

12  41. At the time of the loan Plaintiff is informed and believes that certain information was

13  concealed from her. such as that  ALLIANCE had an agency relationship with Defendants

14  AMPRO and/or UNITED and that such agency relationship was contrary to the interests of

15  Plaintiff's interest in this loan, for example Plaintiff is informed and believes that Defendant, and

16  each of them. paid the remaining other Defendants herein a Yield Spread Premium as set forth

17  above in order to make the loan more favorable to Defendant. and each of them. and less

18  favorable for Plaintiff, by providing a higher rate of interest to Plaintiff or some less desirable

19  terms of the loan, in order that the loan was worth more money to Defendant ALLIANCE and

20  subsequent purchasers when and as they sold their loan(s) and to the other investors as they sold

21  or held the loan.

22  42. Plaintiff is informed and believes and thereupon alleges that Defendants. and each of them,

23  represented to Plaintiff that Defendants. and each of them. were working for the benefit of

24  Plaintiff and in her particular best interest to obtain for her the best loan and at the best rates

25  available.

26  43.  That at the time Defendants. and each of them, made the foregoing false representations to

27  Plaintiff they knew that they were untrue and that these representations were material

28  representations.

10

44. That the foregoing representations were made in order to induce Plaintiff to act on and take the said loan(s) in order for both defendants to make a substantial amount of money thereby and there from.

45. Plaintiff was induced to and did take this loan based on the said representations

46. That Plaintiff was induced to rely and did rely on the representations of these defendants through deception and her reliance was justified as he believed that Defendants. and each of them. working for her and in her best interest.

47. That by virtue of Plaintiff reliance and the increased interest he was made to pay. he has been damaged in the loss of her good credit and a higher payment and is now being involved in litigation that he did not bargain for, all to her damage and injury.

48. Plaintiff has relied on the representations of this Defendant and because of this reliance has made various moves to avoid the foreclosure all to no avail, while defendants knew all the time that they were deceiving Plaintiff

49. Plaintiff's reliance was justified based upon the false representations of Defendants. and each of them, and had no reason to believe that a party representing a bank would go to such lengths to deceive and to convert Plaintiff's property.

50. Plaintiff is informed and believes that Defendants. and each of them, at the time of execution of the Deed of Trust and Note maintained an interest in the Subject Property, however at the time the Note and Deed of Trust were assigned to Defendant ALLIANCE the Note was no longer negotiable and the power of sale was not conveyed during the assignment. notwithstanding the foregoing. Defendants. and each of them. foreclosed on Plaintiff's Trust Deed. in concert with their scheme to defraud Plaintiff out of her property.

51. Plaintiff has recently learned that Defendants. and each of them, are not the legal owners of the Note and Trust Deed and was not at the time they issued the notices and commenced the foreclosure process. notwithstanding the fact that the note was not negotiable and did not contain a valid power of sale.

11

COMPLAINT FOR DECLARATORY RELIEF AND FOR DAMAGES

EXHIBIT 2 PAGE 21

52. Plaintiff alleges that Defendants, and each of them, knew at the time they made these representations to Plaintiff that they were untrue, and defendants know at the time that they were attempting to foreclose on Plaintiff's Trust Deed and note that they had no right to do so.

53. Plaintiff alleges Defendants, and each of them, intentionally and fraudulently converted Plaintiff's right, title and interest to her property, and any equity therein.

54. Plaintiff alleges that due to her reliance on Defendants representations he has been damaged in an amount that currently exceeds $1,000,000 and additionally costs of moving out of Plaintiff's property and the costs to relocate back to the subject Property.

55. Additionally, Plaintiff has been made to suffer deep and severe emotional distress mortification, anxiety and humiliation all to her damage and injury in an amount the totality of which has not yet been fully ascertained, but in no event less than the jurisdiction limitations of this court.

56. Defendants conduct as set forth above was intentional, oppressive fraudulent and malicious so as to justify an award of punitive damages in an amount sufficient that such conduct will not be repeated.

### THIRD CAUSE OF ACTION

Tortuous Violation of Statute

Real Estate Settlement Procedures Act

12 USC section 2607 (b) illegal kickbacks

(As Against Defendants ALLIANCE Finance, UNITED

Investment and Loan And Does 1 through X, Inclusive)

57. Plaintiff re-alleges and incorporates Paragraphs 1 through 23, of the General Allegations and Paragraphs 31 through 56 of the Second Cause of Action as though such have been fully set forth herein.

58. Plaintiff alleges that The Congress by implementing Title 12 U.S.C. Section 2601 stated the following Congressional findings and purpose:

12

COMPLAINT FOR DECLARATORY RELIEF AND FOR DAMAGES

EXHIBIT 2 PAGE 22

1       (a) The Congress finds that significant reforms in the real estate settlement process are

2   needed to insure that consumers throughout the Nation are provided with greater and more

3   timely information on the nature and costs of the settlement process and are protected from

4   unnecessarily high settlement charges caused by certain abusive practices that have developed in

5   some areas of the country. The Congress also finds that it has been over two years since the

6   Secretary of Housing and Urban Development and the Administrator of Veterans' Affairs

7   submitted their joint report to the Congress on ``Mortgage Settlement Costs'' and that the time

8   has come for the recommendations for Federal legislative action made in that report to be

9   implemented.

10       (b) It is the purpose of this chapter to effect certain changes in the settlement process for

11   residential real estate that will result--

12       (1) in more effective advance disclosure to home buyers and sellers of settlement costs;

13       (2) in the elimination of kickbacks or referral fees that tend to increase unnecessarily the

14   costs of certain settlement services;

15       (3) in a reduction in the amounts home buyers are required to place in escrow accounts

16   established to insure the payment of real estate taxes and insurance; and

17       (4) in significant reform and modernization of local recordkeeping of land title

18   information.

19   59.  Plaintiff alleges that Defendants. and each of them. as will be set forth herein violated both

20   the terms and spirit of sections 12 U.S.C. Section 2601. etc. et seq.

21   60.  Plaintiff alleges that he was in the group of persons for whom 12 U.S.C. Section 2601. etc.

22   et seq. was intended to protect and that Plaintiff suffered damages which were actually and

23   proximately caused by Defendants' violations thereof.

24   61.  Plaintiff alleges that section 12 U.S.C. Section 2607(d)(5) provides for a private right of

25   action to recover damages and treble damages for violations therein. Said section provides both

26   civil and criminal penalties for violations thereof.

27   62.  Plaintiff are informed and believe that Defendant ALLIANCE paid compensation after the

28   funding and outside of the escrow to the remaining Defendants. and each of them, to place

COMPLAINT FOR DECLARATORY RELIEF AND FOR DAMAGES

EXHIBIT 2 PAGE 23

Plaintiff in a less desirable loan.  And that AMPRO and/or UNITED were  paid an undisclosed point spread or other undisclosed compensation during and/or after the funding of the escrow, had Plaintiff known prior to the execution of the loan. she would not have executed the loan. Plaintiff also is informed and believes that Defendants, and each of them, structured an undisclosed, unknown percentage of the loan for servicing this loan, and as these percentage of points affect the loan and the loan terms and Plaintiff's obligation there under they were required to be disclosed on the HUD1 Statement but Defendant failed to do so, in violation of the section, in order to defraud Plaintiff of her money.

63. Plaintiff are further informed that the remaining Defendants. and each of them. were paid a fee by ALLIANCE. or undisclosed compensation which was paid outside of escrow and after the closing as a Yield Spread Premium or point spread which was an illegal. because it was an undisclosed kick back and is an illegal fee and that this fee which Plaintiff has recently discovered is an illegal fee was not disclosed to Plaintiff as to this fees purpose.

64.  A yield spread premium a fee that is considered a kick back as it is paid for placing the borrower into a higher interest rate loan or for some other disadvantage for the borrower and an advantage to the initial lender and the other lenders in the chain of title. The yield spread premium is a rate spread based on the interest rate and yield of the loan, and had Plaintiff known that he was paying the yield spread premium, he would not have executed the loan.

65. Plaintiff is further informed and believes that each of the other entities that bought and sold this note received back end payments upon their sale and acquisition of these notes which also were not disclosed. that these fees and payments are based on the loan terms and interest rate charged to Plaintiff and that these fees and payments are a part of the loan and the cost of the loan to Plaintiff which are and were required to be disclosed on the TILA and by the RESPA disclosure requirements.

66. That the fees and kickbacks were illegal under 12, USC 2607(b) and that therefore as provided by Statute 12, USC 2607(d) Plaintiff are entitled to and seeks treble damages therefore in a sum subject to proof at time of trial.

14

COMPLAINT FOR DECLARATORY RELIEF AND FOR DAMAGES

EXHIBIT 2 PAGE 24

67. That in addition Plaintiff believes that the entity who purchased the Note from AMPRO and/or UNITED paid Defendants, and each of them, fees after the closing that were based on the interest rate of the loan and that this rate and fee paid directly affected the loan and terms for Plaintiff and that they were required to disclose the range of fees and how the loan was affected thereby on the HUD 1, but failed to do so and therefore Plaintiff seeks in addition to the fees.

68. Plaintiff alleges that these fees and penalties are not time barred as the purpose of these fees were not explained to Plaintiff at the time of the closing and signing.

69. Plaintiff has suffered damages actually and proximately caused by Defendants' violation of the within statute in an amount the totality of which has not yet been fully ascertained but, in no event less than the jurisdictional requirements of this court.

## FOURTH CAUSE OF ACTION

Tortuous Violation of Statute, Business and Professions Code section 17200

(As Against Defendants AMPRO Mortgage Corporation, United Financial Mortgage Corporation, Alan Parkenson, Alliance Bancorp, IndyMac Federal N.A. and Does I through X, Inclusive)

70. Plaintiff re-alleges and incorporates Paragraphs 1 through 23 of the General Allegations, Paragraphs 31 through 56, and Paragraphs 58 through 69 of the Second and Third Causes of Action as though such have been fully set forth herein.

71. On or about, January 29, 2007, representatives of Defendants, and each of them, made false representations to Plaintiff regarding the value of her residence in order to fund a loan, in which the Plaintiff's personal residence was to be security therefore. Plaintiff alleges that Defendants, and each of them, made certain representations regarding their honesty, that they were experts in obtaining loans which borrower's could afford and that they would only offer Plaintiff a loan which was in her best interests given her credit history and financial needs and limitations and that Plaintiff could trust the representations of Defendants, and each of them.

COMPLAINT FOR DECLARATORY RELIEF AND FOR DAMAGES

EXHIBIT 2 PAGE 25

72. Plaintiff alleges that Defendants, and each of them, created a special relationship in which the Defendants, and each of them, voluntarily assumed a special duty to Plaintiff not to offer, expose or execute a loan which was not within Plaintiff's financial needs and limitations, more particularly, Defendants, and each of them, represented that they would only make a loan to Plaintiff that he had the ability to repay, according to her then known financial condition.

73. Plaintiff alleges that Defendants, and each of them, breached the aforementioned special duty by the following acts and/or omissions including but, not limited to:

1. Defendants, and each of them, offered Plaintiff a loan which he could not afford given her then known financial condition;

2. Defendants, and each of them, executed a loan with Plaintiff which they knew or should have known that Plaintiff could not afford given her then known financial condition;

3. Defendants, and each of them, knew or should have known that Plaintiff was not told the true cost to originate the loan;

4. Defendants, and each of them, negligently failed to disclose to Plaintiff the true cost to originate the loan;

5. Defendants, and each of them, negligently failed to comply with the disclosure requirements of the Truth In Lending Act; and

6. Defendants, and each of them, negligently failed to comply with the Real Estate Settlement Procedures Act by failing to disclose to Plaintiff that the Defendants charged Plaintiff a yield spread premium.

7. Defendants, and each of them, negligently executed a foreclosure based upon a void promissory note;

8. Defendants, and each of them, negligently executed a foreclosure without possession of the original promissory note:

9. Defendants, and each of them, negligently made the loan to Plaintiff by "marketing and extending adjustable-rate mortgage ("ARM") products to subprime Plaintiff in an unsafe and unsound manner that greatly increases the risk that Plaintiff would default on the loan, including ARM products with one or more of the following characteristics: qualifying Plaintiff with a low

16

COMPLAINT FOR DECLARATORY RELIEF AND FOR DAMAGES

EXHIBIT 2 PAGE 26

1  initial payment on an introductory or "star" rate that will expire after an initial period, without an

2  adequate analysis of the Plaintiff's ability to repay the debt at the fully-indexed rate; approving

3  Plaintiff without considering appropriate documentation and/or verification of her income;

4  containing product features likely to require frequent refinancing to maintain an affordable

5  monthly payment and/or to avoid foreclosure;  including substantial prepayment penalties and/or

6  prepayment penalties that extend beyond the initial interest rate adjustment period; providing

7  Plaintiff with inadequate and/or confusing information relative to product choices, material loan

8  terms and product risks, prepayment penalties, and the Plaintiff's obligations for property taxes

9  and insurance; approving Plaintiff for a loan with inadequate debt-to-income analyses that did

10  not properly consider the Plaintiff's ability to meet her overall level indebtedness and common

11  housing expenses; and/or  approving Plaintiff for loan or 'piggyback' loan arrangements with

12  loan-to-value ratios approaching or exceeding 100 percent of the value of the collateral;" and

13  making Plaintiff a mortgage loan without adequately considering the Plaintiff's ability to repay

14  the mortgage according to its terms.

15  74. Plaintiff alleges that based upon the representations made by Defendants, and each of them,

16  Plaintiff reasonably reposed her trust in their representations and disclosed her private financial

17  information to Defendants, in order that Defendants could in keeping with their representations,

18  find a loan which was in the best interests of Plaintiff given her financial needs and limitations.

19  More particularly, Defendants, and each of them, represented that they would not make a loan to

20  Plaintiff unless he could afford the loan, and that they would not make the loan unless and until

21  he had passed the underwriting guidelines of the lender, which further assured that the loan being

22  offered to Plaintiff was in fact in the Plaintiff's best interests, and that the loan was within

23  Plaintiff's financial needs and limitations and thereafter negligently foreclosed upon the Subject

24  Property in violation of  California Civil Code section 2924 et seq.

25  75.  Plaintiff alleges that he suffered damages which were substantially caused by the negligent

26  breach of duty of Defendants, and each of them.

27

28

COMPLAINT FOR DECLARATORY RELIEF AND FOR DAMAGES

EXHIBIT 2 PAGE 27

76. That Plaintiff actually and proximately suffered damages in an amount the totality of which has not yet been fully ascertained, but in no event less than the jurisdictional limitations of this court.

## FIFTH CAUSE OF ACTION:

## <u>VIOLATION OF CALIFORNIA CIVIL CODE 2923.6</u>

(As Against Defendants AMPRO Mortgage Corporation, United Financial Mortgage Corporation, Alan Parkenson, Alliance Bancorp, IndyMac Federal N.A. and Does I through X, Inclusive)

77. Plaintiff reallege and incorporate by reference the above paragraphs 1 through 76 as though set forth fully herein.

78. Defendants' Pooling and Servicing Agreement (hereinafter "PSA") contains a duty to maximize net present value to its investors and related parties.

79. *California Civil Code 2923.6* broadens and extends this PSA duty by requiring servicers to accept loan modifications with borrowers.

80. Pursuant to *California Civil Code 2923.6(a)*, a servicer acts in the best interest of all parties if it agrees to or implements a loan modification where the (1) loan is in payment default, and (2) anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.

81. *California Civil Code 2923.6(b)* now provides that the mortgagee, beneficiary, or authorized agent offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.

82. Plaintiffs' loan is presently in an uncertain state.

83. Plaintiffs are willing, able, and ready to execute a modification of their loan at a new interest rate of 3.8% and a new loan length of 30 years.

84. The present fair market value of the property is $250,000.

85. The Joint Economic Committee of Congress estimated in June, 2007, that the average foreclosure results in $77,935.00 in costs to the homeowner, lender, local government, and neighbors.

86. Of the $77,935.00 in foreclosure costs, the Joint Economic Committee of Congress estimates that the lender will suffer $50,000.00 in costs in conducting a non-judicial foreclosure on the property, maintaining, rehabilitating, insuring, and reselling the property to a third party. Freddie Mac places this loss higher at $58,759.00.

87. The **anticipated recovery** through foreclosure on a net present value basis is **$180,000.00 or less.**

88. The **recovery under the proposed loan modification at $200,000.00 exceeds the net present recovery through foreclosure of $180,000.00 by over $20,000.00.**

89. Pursuant to *California Civil Code §2823.6*, Defendants are now contractually bound to accept the loan modification as provided above and tender is deemed made pursuant to Defendants' Pooling and Service Agreement, California Civil Code 2923.6(a), and California Civil Code 2923.6(b), taken individually or entirely. Plaintiffs invoke the remedies embodied in the aforementioned agreement and/or codes with a willingness to execute a modification of their loan.

90. Alternatively, Plaintiffs allege that tender, if any, is excused by obstruction or prevention or imposition of unwarranted conditions by the person or corporate entity to whom it was to be made.

19

91.  Alternatively, Plaintiffs allege that obstruction or imposition of unwarranted conditions by defendants occurred when defendants evaded the plaintiffs' attempts to provide tender as specified and encouraged by defendants' pooling agreement, California Civil Code 2923.6(a), and California Civil Code 2923.6(b). [Hudson v. Morton, 231 Ala. 392, 165 So. 227 (1936); Loftis v. Alexander, 139 Ga. 346, 77 S.E. 169 (1913); Kennedy v. Neil, 333 Ill. 629, 165 N.E. 148 (1929); Borden v. Borden, 5 Mass. 67, 1809 WL 989 (1809); Loughney v. Quigley, 279 Pa. 396, 123 A. 84 (1924); Montague Corp. v. E.P. Burton Lumber Co., 136 S.C. 40, 134 S.E. 147 (1926); Stansbury V. Embrey, 128 Tenn. 103, 158 S.W. 991 (1913); Loehr v. Dickson, 141 Wis. 332, 124 N.W. 293 (1910)]

92.  Alternatively, Plaintiffs further allege that obstruction or imposition of unwarranted conditions by defendants occurred when defendants manifested to the Plaintiffs that tender, if made, will not be accepted, the Plaintiffs are excused from making tender as it would be a futile gesture, and the law will not require the doing of a useless act. [Simmons v. Swan, 275 U.S. 113, 48 S. Ct. 52, 72 L. Ed. 190 (1927); Lee v. Joseph E. Seagram & Sons, Inc., 552 F.2d 447 (2d Cir. 1977); Buckner v. Tweed, 157 F.2d 211 (App. D.C. 1946); Peterson v. Hudson Ins. Co., 41 Ariz. 31, 15 P.2d 249 (1932); Woods-Drury, Inc. v. Superior Court in and for City and County of San Francisco, 18 Cal. App. 2d 340, 63 P.2d 1184 (1st District 1936); Chesapeake Bay Distributing Co. v. Buck Distributing Co., Inc. 60 Md. App. 210, 481 A.2d 1156 (1984); Issacs v. Caterpillar, Inc., 765 F. Supp. 1359 (C.D. Ill. 1991); Platsis v. Diafokeris, 68 Md. App. 257, 511 A.2d 535 (1986)]

93.  Alternatively, Plaintiffs further allege that obstruction or imposition of unwarranted conditions by defendants occurred when defendants' objection for want of actual tender of money is waived by defendants' refusal to receive the money if produced.  [Shaner v West Coast

20

COMPLAINT FOR DECLARATORY RELIEF AND FOR DAMAGES

EXHIBIT 2 PAGE 30

1  Life Ins. Co, 73 F.2d 681 (C.C.A. 10th Cir. 1934); Buell v. White, 908 P.2d 1175 (Colo. Ct. App.

2  1995) (when party, who is willing and able to pay, offers to pay another a sum of money and is

3  advised that it will not be accepted, offer amounts to tender even though money is not produced);

4
   Hall v. Norwalk Fire Ins. Co., 57 Conn. 105, 17 A. 356 (1888); Lamar v. Sheppard, 84 Ga. 561,

5
   10 S.E. 10984 (1890); Ventres v. Cobb, 105 Ill. 33, 1882 WL 10475 (1882); Metropolitan Credit

6
   Union v. Matthes, 46 Mass. App. Ct. 326, 706 N.E.2d 296 (1999)]

7

8

9                              **SIXTH CAUSE OF ACTION:**

10                     **VIOLATION OF § 1788.17 OF THE RFDCPA**

11            (As Against Defendants AMPRO Mortgage Corporation, United Financial

12     Mortgage Corporation, Alan Parkenson, Alliance Bancorp, IndyMac Federal N.A. and Does I

13                                  through X, Inclusive)

14

15  94.  Plaintiff realleges and incorporates by reference the above paragraphs 1 through 93 as

16  though set forth fully herein.

17
   95.  *California Civil Code*      *§1788.17* requires that Defendants comply with the provisions of

18
   *15 U.S.C. § 1692,* through their acts including but not limited to, the following:

19

20          (a)   The Defendants violated *California Civil Code § 1788.17* by engaging in conduct,

21                the natural consequence of which is to harass, oppress, and abuse persons in

22                connection with the collection of the alleged debt, a violations of *15 U.S.C. §*

23                *1692(d);*

24

25          (b)   The Defendants violated *California Civil Code § 1788.17* by misrepresenting the

26                status of the debt, a violations of *15 U.S.C. § 1692(e)(s)(A);*

27

28

                                            21

EXHIBIT 2 PAGE 31

(c)   The Defendants violated *California Civil Code § 1788.17* by using unfair or unconscionable means to collect or attempt to collect a debt. a violation *15 U.S.C. § 1692(f)*; and

(d)   The Defendants violated *California Civil Code § 1788.17* by using deceptive means to collect or attempt to collect a debt from the Plaintiff. a violation of *15 U.S.C. § 1692e(10)*.

96.  The foregoing violations of *15 U.S.C. § 1692* by Defendants result in separate violations of *California Civil Code § 1788.17*.

97.  The forgoing acts by Defendants were willful and knowing violations of Title 1.6C of the *California Civil Code* (FRDCPA). are sole and separate violations under *California Civil Code § 1788.30(b)*, and trigger **multiple $1,000.00 penalties.**

98.  *California Civil Code § 1788.17* provides that Defendants are subject to the remedies of *15 U.S.C. § 1692(k)*. for failing to comply with the provisions of *15 U.S.C. § 1692(b)(6) and § 1692(c)c.*

99.  The foregoing acts by Defendants were intentional persistent. frequent. and devious violations of *15 U.S.C. § 1692*. which trigger **additional damages of $1,000.00 under** *15 U.S.C. § 1692(k)(a)(2)(.4)*.

### SEVENTH CAUSE OF ACTION:
### VIOLATION OF CIVIL CODE §1572

(As Against Defendants AMPRO Mortgage Corporation, United Financial Mortgage Corporation. Alan Parkenson, Alliance Bancorp, IndyMac Federal N.A. and Does I through X, Inclusive)

22

EXHIBIT 2 PAGE 32

100.   Plaintiff realleges and incorporates by reference the above paragraphs 1 through 99 as though set forth fully herein.

101.   The misrepresentations by Defendants' and/or Defendants' predecessors, failures to disclose, and failure to investigate as described above were made with the intent to induce Plaintiff to obligate himself on the Loan in reliance on the integrity of Defendants and/or Defendants' predecessors.

102.   Plaintiff is an unsophisticated customer whose reliance upon Defendants and/or Defendants' predecessors was reasonable and consistent with the Congressional intent and purpose of *California Civil Code § 1572* enacted in 1872 and designed to assist and protect consumers similarly situated as Plaintiff in this action.

103.   As an unsophisticated customer, Plaintiff could not have discovered the true nature of the material facts on their own.

104.   The accuracy by Defendants and/or Defendants' predecessors of representation is important in enabling consumers such as Plaintiff to compare market lenders in order to make informed decisions regarding lending transactions such as a loan.

105.   Plaintiff was ignorant of the facts which Defendants and/or Defendants' predecessors misrepresented and failed to disclose.

106.   Plaintiffs reliance on Defendants and/or Defendants' predecessors was a substantial factor in causing their harm.

107.   Had the terms of the Loan been accurately represented and disclosed by Defendants and/or Defendants' predecessors, Plaintiff would not have accepted the Loan nor been harmed.

108.   Had Defendants and/or Defendants' predecessors investigated Plaintiff's financial capabilities, they would have been forced to deny Plaintiff on this particular loan.

109.   Defendants and/or Defendants' predecessors conspired and agreed to commit the above mentioned fraud.

110.   As a proximate result of Defendants and or Defendants' predecessors fraud, Plaintiff has suffered damage in an amount to be determined at trial.

111.   The conduct of Defendants and/or Defendants' predecessors as mentioned above was fraudulent within the meaning of *California Civil Code § 3294(c)(3)*, and by virtue thereof

23

1  Plaintiff is entitled to an award of punitive damages in an amount sufficient to punish and make

2  an example of the Defendants.

3

4  **WHEREFORE,** Plaintiff having set forth the claims for relief against Defendants, respectfully

5  pray that this Court grant the following relief against the Defendants:

6      1.      For exemplary and punitive damages;

7      2.      Statutory damages pursuant to California Civil Code §1788.30(a) and 15 U.S.C. §

8
9  1692(k)(a)(2)(A);

10     3.      Actual Economic and Non-Economic Damages;

11     4.      Costs and reasonable attorney's fees pursuant to *California Civil Code* §1717,

12  §1788.30(b), §1788.30(c);

13     5.      For a declaration of the rights of the parties relative to Plaintiff's Home, including

14  a declaration that Defendants have no enforceable lien against Plaintiff's Home;
15

16     6.      For a preliminary injunction and permanent injunction enjoining all Defendants,

17  their agents, assigns, and all person acting under, for, or in concert with them, from foreclosing

18  on Plaintiff's Home or from conducting at trustee's sale or causing a trustee's sale to be
19
20  conducted relative to Plaintiff's Home.

21     7.      Cancellation of the sale and restitution of the home to the Plaintiffs; and

22     8.      For such other and further relief as the Court may deem just and proper.

23     9.      For an Order, requiring Defendant to reinstate Plaintiff on title to his Property,

24  and or a restraining order preventing Defendants and his, hers, or its agents, employees, officers,

25  attorneys, and representatives from engaging in or performing any of the following acts: (i)
26
27  offering, or advertising this property for sale and (ii) attempting to transfer title to this property

28  and or (iii) holding any auction therefore;

24

EXHIBIT 2 PAGE 34

10.   For damages as provided by statute;

11.   For an Order enjoining Defendants from continuing to violate the statutes alleged herein;

12.   For an Order enjoining Defendants from continuing to violate the statutes alleged herein:

13.   For an Order, requiring Defendant to reinstate Plaintiff on title to his Property, and or a restraining order preventing Defendants and his, hers, or its agents, employees, officers, attorneys, and representatives from engaging in or performing any of the following acts: (i) offering, or advertising this property for sale and (ii) attempting to transfer title to this property and or (iii) holding any auction therefore;

14.   For such other and further relief as the court may deem just and proper.

Dated: December 18, 2008

TIMOTHY L. MCCANDLESS,
Attorney for Plaintiff,
Billie J. Larry

25

COMPLAINT FOR DECLARATORY RELIEF AND FOR DAMAGES

EXHIBIT 2 PAGE 35

VERIFICATION

1
2   I, Timothy L. McCandless, Esq., declare:

3        I am the attorney of record for the within Plaintiff, who are located out of county and are

4   not available to execute a verification, I have read the within pleading, and on information and

5   belief. believe that the matters therein to be true and on that ground allege that the matters stated

6   
7   therein are true. Executed in Victorville, California

8        DATED: December 19, 2008
9
10
11                                                   Timothy L. McCandless, Esq.,
12                                                   Attorney for Plainitff (s),
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

27

Complaint

EXHIBIT 2 PAGE 36

# EXHIBIT A

EXHIBIT 2 PAGE 37

Cover Sheet

Jack Ferm

The Justice Foundation

Phone number.

Fax number: 435 674 9333

Delotes Williams

August 25 2008

310 404 5951

Fax Number: 310 631 2762

email   delores3391@sbcglobal.net

Urgent        Reply ASAP        Please comment        Please review        For your information

Comments:

\* Number of pages faxed including cover:  7    //

Re:  Billie Jean Larry

1.    Ampro. United  Financial Mortgage Corp.. Alliance
Bancorp, IndyMac:

        Order Summarily Revoking Residential
Mortgage Lender and/or Servicer License

Miscellaneous related documents



EXHIBIT 2 PAGE 38



1  PRESTON DUFAUCHARD
   CALIFORNIA CORPORATIONS COMMISSIONER
2  WAYNE STRUMPFER
   DEPUTY COMMISSIONER
3  ALAN S. WEINGER (CA BAR NO. 86717)
   SUPERVISING ATTORNEY
4  320 WEST 4th STREET, SUITE 750
   LOS ANGELES, CALIFORNIA 90013-1105
5
6  Attorneys for Complainant

7              BEFORE THE DEPARTMENT OF CORPORATIONS

8                  OF THE STATE OF CALIFORNIA

9
   In the Matter of the Accusation of          )   File No. 4130527
10                                              )
   THE CALIFORNIA CORPORATIONS                  )
11 COMMISSIONER,                                )
                                                )
12             Complainant,                     )
                                                )
13                                              )
14       vs.                                    )
                                                )
15                                              )
                                                )
16                                              )
   AMPRO MORTGAGE CORPORATION ,                 )
17 Respondent                                   )

18
19
20            ORDER SUMMARILY REVOKING
        RESIDENTIAL MORTGAGE LENDER AND/OR SERVICER LICENSE
21
22   THE CALIFORNIA CORPORATIONS COMMISSIONER FINDS THAT:

23     GOOD CAUSE APPEARING, the license issued AMPRO MORTGAGE CORPORATION
24 is hereby revoked for failure to comply with Section 50401 of the California Residential Mortgage
25 Lending Act which requires the payment of an assessment to the Commissioner.
26
27
28

EXHIBIT 2 PAGE 39

1

2   Dated:          November 1, 2006
3   Effective:      December 1, 2006
                    Los Angeles, California
4

5                          PRESTON DUFAUCHARD
                           CALIFORNIA CORPORATIONS COMMISSIONER
6

7

8              By_____
                    DIAUN M. BURNS
9                   Special Administrator
                    California Residential Mortgage Lending Act
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 2 PAGE 40

# AUTOMATED VALUATION MODEL NOTICE

Loan Number: 0020101695

Date: JANUARY 29, 2007

Lender: AMPRO MORTGAGE, A DIVISION OF UNITED FINANCIAL MORTGAGE
CORP.
Borrower: BILLIE J. LARR:

Property Address: 3.3. ARLINGTON AVENUE, LOS ANGELES, CALIFORNIA 9004:

AN AUTOMATED VALUATION MODEL IS NOT AN APPRAISAL. IT IS A COMPUTERIZED
PROPERTY VALUATION SYSTEM THAT IS USED TO DERIVE A REAL PROPERTY VALUE.

YOU HAVE THE RIGHT TO RECEIVE A COPY OF THE AUTOMATED VALUATION MODEL (AVM)
RESULT USED IN CONNECTION WITH YOUR APPLICATION FOR CREDIT. IF YOU WISH TO
RECEIVE A COPY OF THE AVM RESULT, PLEASE SEND YOUR WRITTEN REQUEST TO:

AMPRO MORTGAGE, A DIVISION OF UNITED FINANCIAL MORTGAGE CORP.
16000 VENTURA BOULEVARD, SUITE 212
ENCINO, CALIFORNIA 91436-2370

LENDER MUST RECEIVE YOUR REQUEST FOR A COPY OF THE AVM RESULT NO LATER THAN
90 DAYS AFTER LENDER PROVIDES NOTICE OF THE ACTION TAKEN ON YOUR APPLICATION OR
A NOTICE OF INCOMPLETENESS, OR IN THE CASE OF A WITHDRAWN APPLICATION, 90 DAYS
AFTER THE WITHDRAWAL. FURTHER NOTE THAT RELEASE OF THE COPY OF THE AVM RESULT
MAY BE CONDITIONED UPON PAYMENT OF A FEE.

IN YOUR REQUEST, PLEASE INCLUDE THE FOLLOWING INFORMATION: YOUR NAME AND
ADDRESS, THE PROPERTY ADDRESS (IF DIFFERENT FROM YOUR ADDRESS), AND YOUR LOAN
OR APPLICATION NUMBER, IF YOU KNOW THEM.

EXHIBIT 2 PAGE 41

AMPRO MORTGAGE, A DIVISION OF UNITED FINANCIAL MORTGAGE CORP
16000 VENTURA BOULEVARD, SUITE 212
ENCINO, CALIFORNIA 91436-2370
(818)742-1913

Date: JANUARY 29, 2007

Mortgagor Name: BILLIE J. LARRY

Property Address: 5131 ARLINGTON AVENUE, LOS ANGELES, CALIFORNIA 90043

RE: Loan Number: 1080101695

Dear Mortgagor(s):

Effective APRIL 1, 2007    the servicing of your mortgage loan will transfer to ALLIANCE BANCORP

This transfer does not change the terms and conditions of your original mortgage contract other than the transfer of the servicing of your loan

As of the effective date, all future payments must be sent to GMAC MORTGAGE, LLC
P.O. BOX 780, WATERLOO, IOWA 50704-0780

Please make your check or money order payable to GMAC MORTGAGE, LLC

A monthly Mortgage Loan Statement will be sent to you, but until you receive this statement, mail your check or money order to.
GMAC MORTGAGE, LLC
P.O. BOX 780
WATERLOO, IOWA 50704-0780

Please refer any questions you have as of the effective date to ALLIANCE BANCORP

at the following address.
1000 MARINA BOULEVARD, SUITE 100
BRISBANE, CALIFORNIA 94005

Next January you will be furnished with a statement reflecting the amount of mortgage interest and real estate property taxes that you paid during the calendar year that we serviced your account.  If you have any questions concerning your account. please contact the Customer Service Department at (800)582-1122

It has been a pleasure to service your mortgage loan and we wish you a successful relationship with
ALLIANCE BANCORP

Sincerely,
AMPRO MORTGAGE, A DIVISION OF UNITED FINANCIAL MORTGAGE CORP.

EXHIBIT 2 PAGE 42

# LOAN PURCHASE VOUCHER

| | |
|---|---|
| **INSTITUTION NAME/NO:** AMFO MORTGAGE, A DIVISION OF UNITED FINANCIAL MORTGAGE CORP. | **LOAN NUMBER** 1080101695 |
| **CONTACT'S NAME:** PARKINSON, ALAN | **DPC DATE:** JANUARY 29, 2007 |
| **LENDER'S ADDRESS:** 16000 VENTURA BOULEVARD, SUITE 212, ENCINO, CALIFORNIA 91436-2370 | **CONTACT'S PHONE & FAX NO.:** |
| **TRADE NUMBER:** | **BULK NUMBER** |

## DEED OF TRUST/MORTGAGE

| | | |
|---|---|---|
| **NAMES FROM THE DEED OF TRUST:** BILLIE J. LARRY, | | **VESTING CODE:** |
| **GENDER PRIMARY BORROWER:** AGE: | **RACE PRIMARY BORROWER:** | **Gender Codes:** 1-Male  2-Female |
| **GENDER CO-BORROWER:** AGE: | **RACE CO-BORROWER:** | **Race Codes:** 1-American Indian 2-Asian/Pacific 3-Black 4-Hispanic 5-White 6-Other 7-Information Not Provided 8-Not Applicable |
| **SECURITY INSTRUMENT:** (1-DOT, 2-MORTGAGE) | **DATE OF DOT:** JANUARY 29, 2007 | **NUMBER OF ASSIGNMENTS:** |
| **COUNTY:** LOS ANGELES | **PREVIOUS OWNER'S NAME:** | |
| **FUNDER NO.** | **UNDERWRITER NO.** | **LOAN TYPE:** CONVENTIONAL |

## NOTE INFORMATION

| | | |
|---|---|---|
| **FHA/VA/PMI CASE NO:** | **ORIGINAL LOAN AMOUNT:** 412,000.00 | **BASE LOAN AMOUNT** |
| **FIRST PAYMENT DATE:** APRIL 1, 2007 | **P&I:** 1091.16 | **PRINCIPAL BAL:** 412,000.00 |
| **NEXT PAYMENT DUE:** MAY 1, 2007 | **ESCROW BAI** | **ESCROW HOLDBACK/ADMIN FEE:** | **INTEREST RATE:** 8.250 |

**PROPERTY ADDRESS/CITY/STATE/ZIP CODE:** 5131 ARLINGTON AVENUE, LOS ANGELES, CALIFORNIA 90043

**MAILING ADDRESS (IF DIFFERENT FROM PROPERTY ADDRESS):** 5131 ARLINGTON AVENUE, LOS ANGELES, CALIFORNIA 90043

| **TERM:** 360 Mos. | **PROPERTY TYPE:** SINGLE FAMILY | **LPC NO:** | **COMMITMENT NO:** |
|---|---|---|---|

## GENERAL INFORMATION

| | |
|---|---|
| **SS NO. PRIMARY BORROWER:** 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 | **TOTAL MO. INCOME:** | **TOTAL MONTHLY EXPENSE:** |
| **HOME PHONE:** | **PHONE NO. 2** |
| **EMPLOYER FOR BORROWER:** | **PHONE NO.:** |
| **EMPLOYER FOR CO-BORROWER:** | **PHONE NO.:** |
| **APPRAISED VALUE:** 515,000.00 | **PURCHASE PRICE** | **YEAR PROPERTY BUILT:** | **# OF BEDROOMS:** |
| **FLOOD ZONE:** | **LTV:** 80.0 | ☐ BANKRUPTCY/PAST 7 YEARS ☐ SELF EMPLOYED ☐ CASH-OUT REFINANCE ☐ STREAMLINE FHA/VA |

| ARM INFORMATION | BUYDOWN INFORMATION |
|---|---|

| | |
|---|---|
| **ARM INDEX:** 4.933 | ☐ REGULAR  ☐ LENDER PAID  ☐ 2/1 ☐ 3/2/1 ☐ OTHER |
| **1ST CHANGE DATE:** APRIL 1, 2008 | **YEAR MONTHLY BUYDOWN** | **YEARLY BUYDOWN** |
| **ADJUSTMENT CAP:** | 1 |
| **FLOOR:** 3.400 | 2 |

EXHIBIT 2 PAGE 43

BILLIE J. LARRY,

| GENDER PRIMARY BORROWER: AGE. | RACE PRIMARY BORROWER: | Gender Codes: 1-Male 2-Female |
|---|---|---|
| GENDER CO-BORROWER: AGE: | RACE CO-BORROWER. | Race Codes: 1-American Indian 2-Asian/Pacific 3-Black 4-Hispanic 5 White 6-Other 7-Information Not Provided 8-Not Applicable |

| SECURITY INSTRUMENT (1-DOT 2-MORTGAGE) | DATE OF DOT: JANUARY 29, 2007 | NUMBER OF ASSIGNMENTS: |
|---|---|---|
| COUNTY. LOS ANGELES | | PREVIOUS OWNER'S NAME. |
| FUNDER NO: | UNDERWRITER NO. | LOAN TYPE: CONVENTIONAL |

## NOTE INFORMATION

| FHA/VA/PMI CASE NO: | ORIGINAL LOAN AMOUNT. 412,000.00 | BASE LOAN AMOUNT |
|---|---|---|
| FIRST PAYMENT DATE. APRIL 1, 2007 | P&I: 1091.16 | PRINCIPAL BAL: 412,000.00 |
| NEXT PAYMENT DUE: MAY 1, 2007 | ESCROW BAL: | ESCROW HOLDBACK: ADMIN FEE: | INTEREST RATE: 8.250 |

PROPERTY ADDRESS/CITY/STATE/ZIP CODE
5131 ARLINGTON AVENUE, LOS ANGELES, CALIFORNIA 90043

MAILING ADDRESS (IF DIFFERENT FROM PROPERTY ADDRESS):
5131 ARLINGTON AVENUE, LOS ANGELES, CALIFORNIA 90043

| TERM: 360 Mos. | PROPERTY TYPE: SINGLE FAMILY | LPC NO: | COMMITMENT NO: |
|---|---|---|---|

## GENERAL INFORMATION

| SS NO. PRIMARY BORROWER: 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 | TOTAL MO. INCOME: | TOTAL MONTHLY EXPENSE: |
|---|---|---|
| HOME PHONE: | PHONE NO. 2 | |
| EMPLOYER FOR BORROWER: | PHONE NO.: | |
| EMPLOYER FOR CO-BORROWER: | PHONE NO.: | |

| APPRAISED VALUE: 515,000.00 | PURCHASE PRICE: | YEAR PROPERTY BUILT: | # OF BEDROOMS: |
|---|---|---|---|
| FLOOD ZONE: | LTV: 80.0 | ☐ BANKRUPTCY/PAST 7 YEARS  ☐ SELF EMPLOYED  ☐ CASH-OUT REFINANCE  ☐ STREAMLINE FHA/VA | |

## ARM INFORMATION                    BUYDOWN INFORMATION

| ARM INDEX: 4.933 | ☐ REGULAR  ☐ LENDER PAID  ☐ 2/1  ☐ 3/2/1 ☐ OTHER | |
|---|---|---|
| 1ST CHANGE DATE. APRIL 1, 2008 | YEAR MONTHLY BUYDOWN | YEARLY BUYDOWN |
| ADJUSTMENT CAP: | 1 | |
| FLOOR: 3.400 | 2 | |
| LIFE CAP: 3.700 | 3 | |
| GPM PLAN NO: | TOTAL: COLLECT-DO NOT COLLECT FROM WIRE: | |
| MARGIN: 3.400 | | |

| OCCUPANCY TYPE. | MATURITY DATE: | NUMBER OF UNITS: |
|---|---|---|
| RURAL PROPERTY? ☐ YES  ☐ NO | BUILDING (Detached or attached?) | DWELLING (Single, Multi-Unit, Condo, etc.) |
| PURPOSE OF LOAN | Condo/PUD Classification. | |

SUBSTITUTE DOC'S? (If conventional, salability and U/W info.)

EXHIBIT 2 PAGE 44



February 13, 2007

Billie J. Larry
5131 Arlington Avenue
Los Angeles, CA. 90043

Re: Closed loan number: 1080101695

Dear, Mr. Larry.

Thank you for allowing Alliance Bancorp to assist you in your financial needs with the recent refinance of the above mentioned property.

At the time your loan documents were processed the interest rate was erroneously disclosed. Your assistance is required to correct this error. We apologize for any inconvenience this may cause you and again thank you for your time.

Please sign the corrected documents enclosed, a corrected note, Pre-payment addendum to the note, Adjustable Rate Balloon Rider, Truth-in-lending disclosure, 2 Notice of Right to Cancel and a self-addressed pre-paid Fed-Ex envelope for your convenience.

This is an urgent matter and your attention required as soon as possible. Please sign all areas high-lighted in yellow, date the documents current and return no later than February 20, 2007.

Should you have any questions please contact me direct, I am here to help you.

Best regards,

B. Patty Quintanilla
Alliance Bancorp
Underwriter
818-742-1913 Telephone.
818-386-1991 Facsimile

bquintanilla@alliancebancorp.net

www westview marsi...

EXHIBIT 2 PAGE 45

Title Advantage

## Property Profile

### Property Data:

Site Address:

5131 Arlington Ave
Los Angeles, CA 90043

Mail Address:

5131 Arlington Ave
Los Angeles, CA 90043

Primary Owner: LARRY,BILLIE J
Secondary Owner:
Telephone Number:
APN: 5015031018
Census Tract: 2345.001
Housing Tract Number: 900
Page Grid (Old): 51-D3
Page Grid (New): 673-G4
Legal Description: TRACT # 900 LOT 232
Subdivision: 900
Property County: LA County

### Property Characteristics:

Bedrooms: 3
Bathrooms: 1 0
Total Rooms:
Zoning: LAR1

Year Built: 1922
Parking:
Fireplace: Y
Pool/View:

Square Feet: 1288
Lot Size: 5200 sq ft (0 12 acres)
Number of Units: 1
Use Code: Single Family Residence

### Sale & Loan Information:

Transfer Date: 02/24/1969
Transfer Value: $0.00
First Loan Amt: $0.00
Loan Type:

Seller:
Cost/Sq Feet: $0 00
Lender: Alliance Bancorp
Interest Rate Type:

Document: 0000001816
Title Company:
Last Trans: 20060817
Last Trans Doc: 0001834095

### Assessed & Tax Information:

Assessed Value: $32,172.00
Land Value: $18,283 00
Improvement Value: $13,889 00

Percent Improvement: 43 17
Tax Amount: $526 47
Tax Status: Current

Homeowner Exemption: Y
Tax Rate Area: 212

This information is compiled from public documents and is not guaranteed

EXHIBIT 2 PAGE 46

# EXHIBIT B

EXHIBIT 2 PAGE 47

11/12/2008 16:01 FAX  760 843 8053        FIDELITY C/S            → E-MAIL           @ 016/035



*SvT*

Recording Requested By:
AMPRO MORTGAGE, A DIV
UNITED FINANCIAL MORTGAGE

*70000690*

20070255219

And After Recording Return To:
ALLIANCE BANCORP, C/O
NATIONWIDE TITLE CLEARING,
ATTN: FINAL DOCS UNIT
2100 ALT 19 NORTH
PALM HARBOR, FLORIDA 34683
Loan Number: 1080101695

*5015 - 31-18*                    [Space Above This Line For Recording Data]                    *22*

# DEED OF TRUST

MIN: 100039307010254748

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   JANUARY 29, 2007        , together with all Riders to this document.

(B) "Borrower" is   BILLIE J. LARRY, A WIDOW


Borrower is the trustor under this Security Instrument.
(C) "Lender" is  AMPRO MORTGAGE, A DIVISION OF UNITED FINANCIAL
MORTGAGE CORP.
Lender is a    ILLINOIS CORPORATION                                        organized
and existing under the laws of   ILLINOIS
Lender's address is   2133 WEST PEORIA AVENUE, SUITE 130, PHOENIX,
ARIZONA 85029-2370

(D) "Trustee" is  SECURITY UNION TITLE INSURANCE COMPANY
1440 BRIDGE GATE DR. #300, DIAMOND BAR, CALIFORNIA 91765

(E) "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary under this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated  JANUARY 29, 2007
The Note states that Borrower owes Lender  FOUR HUNDRED TWELVE THOUSAND AND
00/100                                     Dollars (U.S. $  412,000.00        ) plus interest.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic @Rorms 800-649-1362
Form 3005 01/01                                  Page 1 of 14                              www.docmagic.com

EXHIBIT *2* PAGE *48*

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
**MARCH 1, 2037**
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are
to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Planned Unit Development Rider |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☐ Second Home Rider |
| ☐ Condominium Rider | ☒ Other(s) [specify] |
| | ADJUSTABLE RATE BALLOON RIDER |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.
(K) "Community Associations Dues, Fees, and Assessments" means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in
lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note,
plus (ii) any amounts under Section 3 of this Security Instrument.
(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter. As used in this Security Instrument,
"RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan"
even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that
party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and
assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of
the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01
Page 2 of 14
DocMagic eForms 800-649-1362
www.docmagic.com

EXHIBIT 2 PAGE 49

*4*

covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                    of                    LOS ANGELES          :
[Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 5015-031-019

which currently has the address of  5131 ARLINGTON AVENUE
                                                          [Street]

LOS ANGELES                    , California    90043      ("Property Address"):
[City]                                                        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                    Page 3 of 14

DocMagic @Forms 800-649-1362
www.docmagic.com

07 0255219

EXHIBIT *2* PAGE *50*

11/12/2008 16:02 FAX  760 843 8053          FIDELITY C/S          → E-MAIL          ☒ 019/035

*14*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
BILLEE J. JERRY          -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

Witness:                          Witness:

07 0255219

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic eForms 800-649-1362
Form 3005 01/01                          Page 13 of 14                          www.docmagic.com

EXHIBIT 2 PAGE 51

11/12/2008 18:02 FAX  760 843 8053         FIDELITY C/S              → E-MAIL                ☒020/035

15

State of California                    )
                                       ) ss.
County of LOS ANGELES                  )

On January 29, 2007 before me, Gregory Kirk Demirchian NOTARY PUBLIC

personally appeared   BILLIE J. LARRY

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

NOTARY SIGNATURE

Gregory Kirk Demirchian
(Typed Name of Notary)



NOTARY SEAL

07 0255219

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                          Page 14 of 14

EXHIBIT 2 PAGE 52

11/12/2008 16:02 FAX   760 843 8053        FIDELITY C/S         → E-MAIL              ☒ 021/035

16

MIN: 100039307010254748            Loan Number: 1080101695

# ADJUSTABLE RATE BALLOON RIDER
## (MTA - TWELVE MONTH AVERAGE INDEX - PAYMENT CAPS)

THIS ADJUSTABLE RATE RIDER is made this 29th day of JANUARY
2007            , and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned
(the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to  AMRO MORTGAGE, A
DIVISION OF UNITED FINANCIAL MORTGAGE CORP., AN ILLINOIS CORPORATION
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
5131 ARLINGTON AVENUE, LOS ANGELES, CALIFORNIA 90043

*Property Address*

THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE
AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT
THAT THE MONTHLY PAYMENT CAN INCREASE.  UNLESS YOU MAKE
VOLUNTARY PREPAYMENTS, THERE MAY BE NEGATIVE AMORTIZATION
DURING THE LIFE OF THE LOAN. AS SUCH, THE PRINCIPAL AMOUNT YOU
WILL BE REQUIRED TO REPAY COULD BE GREATER THAN THE AMOUNT YOU
ORIGINALLY BORROWED. THE INTEREST RATE CAN NEVER EXCEED THE
LIMIT STATED IN THIS NOTE.

THIS LOAN IS PAYABLE IN FULL AT MATURITY.  YOU MUST REPAY THE
ENTIRE PRINCIPAL BALANCE OF THE NOTE AND UNPAID INTEREST THEN
DUE.  THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT
THE TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT
OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A
LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH,
WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT
MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COST
NORMALLY ASSOCIATED WITH A NEW LOAN, EVEN IF YOU OBTAIN
REFINANCING FROM THE SAME LENDER.

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

1.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
      The Note provides for changes in the interest rate and monthly payments as follows:

2.    INTEREST
      (A) Interest Rate
      Interest will be charged on unpaid Principal beginning on the 1st   day of MARCH
      2007                              , and continuing until the full amount of Principal has been paid.

ADJUSTABLE RATE BALLOON RIDER                              DocMagic ☺ 800-649-1362
(MTA - TWELVE MONTH AVERAGE INDEX- PAYMENT CAPS)          www.docmagic.com
08/21/06                                                  Page 1 of 6

07 0255219

EXHIBIT 2 PAGE 53

11/12/2008 16:02 FAX  760 843 8053         FIDELITY C/S             ✦ E-MAIL                ☒022/035

17

Interest will initially be charged at a yearly rate of        8.250 %. The interest rate I will be charged may change.

The interest rate required by this Section 2 of this Note is the rate I will be charged both before and after any default described in Section 7(B) of this Note.

(B) Interest Rate Change Dates

The interest rate I will be charged may change on the   1st   day of APRIL 2007             , and on that date every month thereafter.  Each date on which my interest rate could change is called an "Interest Rate Change Date."  The new rate of interest will become effective on each Interest Rate Change Date.  The interest rate may change monthly, but the monthly payment will be recalculated in accordance with Section 3.

(C) Interest Rate Limit

My interest rate will never be greater than      11.950 %.  Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin (as defined in Section 2(D)).

(D) The Index

Beginning with the first Interest Rate Change Date, my interest rate will be based on an Index.  The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields").  The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.  The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index which will be based upon comparable information.  The Note Holder will give me notice of this choice.

(E) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 400/1000                                     percentage point(s) (        3.400 %) ("Margin") to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  This rounded amount will be my new interest rate until the next Interest Rate Change Date.

**3.   PAYMENTS**

(A) Time and Place of Payments

I will make a payment every month.

I will make my monthly payments of any escrow payments Note Holder may require under the Security Instrument on the 1st   day of each month beginning on APRIL, 2007

I will make my monthly payments of Principal and/or Interest on the   1st   day of each month beginning on   APRIL 1, 2007            .  I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.  If, on   MARCH 1, 2037            , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    PO BOX 780, WATERLOO, IOWA 50704-0780                                       or at a different place if required by the Note Holder.

ADJUSTABLE RATE BALLOON RIDER
DATA - TWELVE MONTH AVERAGE INDEX - PAYMENT CAPS)
08/21/06                                    Page 2 of 6

EXHIBIT 2 PAGE 54

11/12/2008 16:03 FAX  760 843 8053        FIDELITY C/S            → E-MAIL              @023/035

18

**(B)  Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first "Payment Change Date" (as defined in Section 3(C)) will be in the amount of U.S. $ 1,091.16 unless adjusted under Section 3(F) of this Note. My initial monthly payment is an amount that would be sufficient to repay the original Principal amount I borrowed in full is substantially equal payments over the Amortization Period (defined below) if my yearly rate was      1.250  % instead of my actual yearly interest rate set forth in Section 2(A) of this Note. The "Amortization Period" is the 40 year period beginning on the    1st      day of APRIL, 2007.

**(C)  Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the    1st    day of    APRIL, 2008        , and on that date every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment, which the Note Holder will determine in accordance with Section 3(D) or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of interest due, then negative amortization will occur. (Negative amortization occurs when the mortgage payment is smaller than the interest due, which causes the Principal balance to increase rather than decrease.)

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Monthly Payment Changes**

At least thirty (30) days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full over the remainder of the Amortization Period in substantially equal installments at the interest rate in effect during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless either Section 3(F) or 3(G) below applies, the amount of my new monthly payment effective on a Payment Change Date will not increase by more than 7.5% of my prior Minimum Payment. This 7.5% limitation is called the "Payment Cap."

The Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Note Holder may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless either Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E)  Additions to My Unpaid Principal**

Since my payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my monthly payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full over the remainder of the Amortization Period in substantially equal payments.  For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the then current interest rate determined in accordance with Section 2.  For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

ADJUSTABLE RATE BALLOON RIDER
(MTA - TWELVE MONTH AVERAGE INDEX- PAYMENT CAPS)            Page 3 of 6
06/21/06

EXHIBIT _2_ PAGE __55__

11/12/2008 16:03 FAX  760 843 8053        FIDELITY C/S          → E-MAIL           ☒024/035

19

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal may never exceed a maximum amount equal to     110.000 % of the Principal amount I originally borrowed. My unpaid Principal balance could exceed the Maximum Limit ( 110.000 % of my original Principal amount) due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment until the next Payment Change Date. This means that my monthly payment may change more frequently than annually and the payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full over the remainder of the Amortization Period in substantially equal installments at the interest rate in effect during the preceding month.

**(G) Required Full Payment**

Regardless of the Payment Cap limitation described in Section 3(D), on the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, the Note Holder may provide me each month with up to four (4) payment Options, three of which may be greater than the Minimum Payment, and all of which are called "Payment Options." The Payment Options that may be available are:

    (1)    **Minimum Payment:** This is the minimum amount Note Holder will accept as my monthly payment. This amount will be provided by Note Holder after the First Interest Rate Change Date and monthly thereafter. The Principal balance will not be decreased by this Payment Option. If the Minimum Payment is not sufficient to cover the amount of interest due, then negative amortization will occur. (Negative amortization occurs when the mortgage payment is smaller than the interest due and that causes the Principal balance to increase rather than decrease.)

    (2)    **Interest Only Payment:** This is the amount that would pay only the interest on the Principal at the current interest rate. The Principal balance will not be decreased by this Payment Option.

    (3)    **30 Year Amortized Payment:** This is the amount necessary to pay both the Principal and interest in full at the Maturity Date in substantially equal payments. This Payment Option is calculated on the assumption that the current interest rate will remain in effect for the remaining term of this Note; however, the current interest rate may in fact change every month.

    (4)    **15 Year Amortized Payment:** This is the amount necessary to pay both the Principal and interest in full within a fifteen (15) year term from the first payment due date in substantially equal payments. This Payment Option is calculated on the assumption that the current interest rate will remain in effect for the remaining term of this Note; however, the current interest rate may in fact change every month.

I may use the Payment Options reflected in H.(2) through H.(4) only if they are greater than the Minimum Payment. If any of these Payment Options results in a payment amount that is less than the Minimum Payment, I must still make the Minimum Payment.

ADJUSTABLE RATE BALLOON RIDER
DATA - TWELVE MONTH AVERAGE INDEX - PAYMENT CAPS
08/21/06                                Page 4 of 6

DocMagic ☎Phone: 800-649-1362
www.docmagic.com

07 0255219

EXHIBIT 2 PAGE 56

11/12/2008 16:04 FAX  760 843 8053        FIDELITY C/S          → E-MAIL          ☒ 025/035

21

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

BILLIE JO LARUE

(Seal)
-Borrower

(Seal)
-Borrower

(Seal)
-Borrower

(Seal)
-Borrower

(Seal)
-Borrower

(Seal)
-Borrower

*[Sign Original Only]*

07 0255219

ADJUSTABLE RATE BALLOON RIDER
6ATA - TWELVE MONTH AVERAGE INDEX  PAYMENT CAPS©
08/21/08                          Page 6 of 6

DocMagic ©Forms 800-649-1362
www.docmagic.com

EXHIBIT 2 PAGE 51

11/12/2008 16:04 FAX  760 843 8053      FIDELITY C/S          ⚬ E-MAIL          ☑ 026/035

Loan Number: 1090101695

Date: JANUARY 29, 2007

Property Address: 5131 ARLINGTON AVENUE, LOS ANGELES, CALIFORNIA 90043

## EXHIBIT "A"

### LEGAL DESCRIPTION

A.P.N. # : 5015-031-018

EXHIBIT _2_ PAGE _58_

11/12/2008 18:04 FAX  760 843 8053          FIDELITY C/S          → E-MAIL          ☑027/035

**EXHIBIT "A"**

**DESCRIPTION**

Order No. 070980690          23

LOT 232 OF TRACT NO. 900, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18, PAGE(S) 166 AND 167 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

07 8255219

POOMLY −11/17/678A

EXHIBIT 2 PAGE 59

11/12/2008 16:05 FAX  760 843 8053          FIDELITY C/S          → E-MAIL          @ 032/035



03/14/07

20070561189

RECORDATION REQUESTED BY:
JPMorgan Chase Bank, N.A.
Retail Loan Servicing KY2-1606
P.O. Box 11606
Lexington, KY 40576-1606

WHEN RECORDED MAIL TO:
JPMorgan Chase Bank, N.A.
Retail Loan Servicing KY2-1606
P O Box 11606
Lexington, KY 40576-1606

FOR RECORDER'S USE ONLY

4709073+1          00426370492378
LARRY, BILLIE
DEED OF TRUST / MORTGAGE

## DEED OF TRUST

THIS DEED OF TRUST is dated December 22, 2006, among BILLIE J LARRY, UNMARRIED WOMAN whose address is 5131 ARLINGTON AVE, LOS ANGELES, CA 90043 ("Trustor"); JPMorgan Chase Bank, NA, whose address is Home Equity and Consumer Lending Division, 1111 Polaris Parkway, Columbus, OH 43240 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Stewart Title of California, Inc., whose address is 1980 Post Oak Blvd STE 300, Houston, TX 77056 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in LOS ANGELES County, State of California:

Parcel ID Number: 5015-031-018
LOT 232 OF TRACT NO. 900, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18, PAGE(S) 166 AND 167 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

The Real Property or its address is commonly known as 5131 ARLINGTON AVE, LOS ANGELES, CA 90043. The Assessor's Parcel Number for the Real Property is 5015-031-018.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property, (2) use, operate or manage the Property, and (3) collect the Rents from the Property.

Duty to Maintain. Trustor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws. Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property. (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters, and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property,

EXHIBIT 2 PAGE 60

11/12/2008 16:06 FAX  760 843 8053          FIDELITY C/S          → E-MAIL          Ø 033/035

07 0561189

## DEED OF TRUST
(Continued)

Loan No: 426370482378

Page 8

Amendments and Reauthorization Act of 1986, Pub. L No 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U S C Section 1801, et seq , the Resource Conservation and Recovery Act, 42 U S C Section 6901, et seq , Chapters 6 5 through 7 7 of Division 20 of the California Health and Safety Code, Section 25100, et seq , or other applicable state or federal laws, rules, or regulations adopted pursuant thereto

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Deed of Trust

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note

**Hazardous Substance.** The words "Hazardous Substance" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substance" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust

**Lender.** The word "Lender" means JPMorgan Chase Bank, NA, its successors and assigns  The words "successors or assigns" mean any person or company that acquires any interest in the Note

**Note.** The word "Note" means the promissory note dated December 22, 2006, **in the original principal amount of $16,000.00** from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.  The maturity date of this Deed of Trust is January 5, 2007

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property, together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property, and together with all proceeds including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property

**Property.** The word "Property" means collectively the Real Property and the Personal Property

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in the Deed of Trust

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents

**Trustee.** The word "Trustee" means Stewart Title of California, Inc , whose address is 1980 Post Oak Blvd STE 300, Houston, TX 77056 and any substitute or successor trustees

**Trustor.** The word "Trustor" means BILLIE J LARRY

TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS.

TRUSTOR:

_____
BILLIE J LARRY, Individually

EXHIBIT  2  PAGE  61

11/12/2008 16:08 FAX  760 843 8053          FIDELITY C/S          → E-MAIL          @034/035

07 0561189

Loan No: 426370492378

**DEED OF TRUST**
(Continued)

Page 9

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF CALIFORNIA )
)SS
COUNTY OF LOS ANGELES )

On 12 22 , 20 06 before me, CLAUDIO SERRA NOTARY PUBLIC personally appeared BILLIE J LARRY, personally known to me [or proved to me on the basis of satisfactory evidence] to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

```
CLAUDIO SERRA
Commission # 1563931
Notary Public - California
Los Angeles County
My Comm. Expires Apr 3, 2009
```

(Seal)

(DO NOT RECORD)
## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To _____ , Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

Date: _____     Beneficiary: _____

By: _____

Its: _____

EXHIBIT 2 PAGE 62

11/12/2008 16:06 FAX  760 843 8053        FIDELITY C/S          → E-MAIL          ☑035/035

07 0561189

# ILLEGIBLE NOTARY SEAL DECLARATION
## (GOVERNMENT CODE 27361.7)

I declare under penalty of perjury that the notary seal on the
document to which this statement is attached, reads as follows:

| | |
|---|---|
| **Name of Notary Public:** | **CLAUDIO SERRA** |
| **Commission Number:** | **1563931** |
| **Notary Public State:** | **CALIFORNIA** |
| **County:** | **LOS ANGELES** |
| **My Commission Expires:** | **04/03/09** |
| **Signature of Declarant:** | |
| **Print name of Declarant:** | **MICHAEL MARINARI** |
| **City & State of Execution:** | **Lexington, KY** |
| **Date signed:** | **Tuesday, January 02, 2007** |

THE ABOVE INFORMATION MUST BE LEGIBLE FOR SCANNING

EXHIBIT 2 PAGE 63

# EXHIBIT C

EXHIBIT 2 PAGE 64

 

**IndyMac Federal Bank®**   Home Loan Servicing
6900 Beatrice Drive
Kalamazoo, MI 49009

7100 4047 5100 5783 2693

September 22, 2008

#BWNDXCT
#6689749882003095#

008067/XC111/668

Billie J Larry
5131 Arlington Ave
Los Angeles CA 90043

RE: Loan No: 3002889479
    Property Address: 5131 Arlington Ave

Dear Billie J Larry :

    We have made repeated attempts to contact you by first class mail
and by phone to discuss your financial situation.  Despite our best
efforts, we have been unable to contact you as of this date.

    You may contact us by phone at 1.877.908.4357 to explore options
that may be available to avoid foreclosure.

    You may also obtain emergency homeowner counseling by calling
1.800.569.4287 to receive a list of HUD-certified housing counseling
agencies in your area.

    We will progress foreclosure within thirty (30) days from the date
of this notice, unless you contact us before then and we reach an
agreement to avoid foreclosure.

Sincerely,

Loan Resolution Department
IndyMac Federal Bank, FSB

EXHIBIT 2 PAGE 65



EXHIBIT 2 PAGE 66

## PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA        )
                           )   ss.:
COUNTY OF LOS ANGELES      )

    I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 515 South Figueroa Street, Ninth Floor, Los Angeles, California 90071-3309.

    On February 19, 2009, I served on interested parties in said action the within:

NOTICE OF REMOVAL

by placing a true copy thereof in sealed envelope(s) addressed as stated below.

    Timothy L. McCandless, Esq.
    LAW OFFICES OF TIMOTHY L. MCCANDLESS
    15647 Village Drive
    Victorville, CA 92394

    I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

    Executed on February 19, 2009, at Los Angeles, California.

| | |
|---|---|
| Lorrie Anderson | _Larrie Anderson_ |
| (Type or print name) | (Signature) |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

819876.01/DOCU
ME~1

NOTICE OF REMOVAL